AO 91 (Rev. 11/11) Criminal Complaint

**FILED**
**VANESSA L. ARMSTRONG**

**JUL 05 2016**

**U.S. DISTRICT COURT**
**WEST'N. DIST. KENTUCKY**

# UNITED STATES DISTRICT COURT
## for the
### WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| | ) | Case No. 3:16-MJ-352 |
| ISMAEL GONZALEZ | ) | |
| DANTE WATTS | ) | |
| ARIEL CRUZ | ) | |
| OSCAR ARGUETA | ) | |
| KINIKI LUCAS | ) | |
| CARLOS CATALAN | ) | |

### CRIMINAL COMPLAINT

I, the complainant in this case, state the following is true to the best of my knowledge and belief.

On or about the date(s) of May through July 2, 2016, in the county of Jefferson in the Western District of Kentucky, the defendants violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Narcotics Conspiracy |

This criminal complaint is based on these facts:

✓      Continued on the attached sheet

_____
*Complainant's signature*

_____
*Special Agent Brian Sanders, DEA*

*Sworn to before me and signed in my presence.*

Date: 7/5/2016

_____
*Judge's Signature*

City and State: Louisville , Kentucky

_____
Colin H. Lindsay, United States Magistrate Judge

*RBB(AUSA initials)*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Brian D. Sanders, having been duly sworn, depose and state:

1. I am a Special Agent with the U.S. Drug Enforcement Administration (DEA) assigned to the Louisville District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516 (1). I have been a Special Agent of the Drug Enforcement Administration since January of 2005, during which time I have specialized in investigations involving narcotics trafficking. I have received specialized training on the subject of narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, distribution, and importation of controlled substances, as well as investigations concerning the methods utilized to finance transactions, launder and transport drug proceeds, and conceal assets purchased with illegal proceeds. This affidavit is based upon my personal knowledge, as well as information reported to me by other federal and local law enforcement officers and others with knowledge of the facts surrounding this case.

2. This affidavit is submitted in support of an application seeking arrest warrants for Ismael GONZALEZ, Dane WATTS, Carlos CATALAN, Kiniki LUCAS, Oscar ARGUETA, and Ariel CRUZ. Your Affiant alleges that the facts and circumstances outlined in this affidavit are indicative of probable cause to believe that GONZALEZ, WATTS, CATALAN, LUCAS, ARGUETA, and CRUZ conspired to possess with the intent to distribute methamphetamine, cocaine and heroin in violation of Title 21, United States Code 846 and 841 (a) (1).

### Facts of the Case

3. In March of 2016, the Drug Enforcement Administration Louisville District Office (LDO), with the assistance of the Louisville Metro Police Department

1

(LMPD), began a series of court authorized wire interceptions involving local heroin and crystal methamphetamine traffickers operating within, but not limited to Louisville, KY. To date, the LDO has obtained authority to intercept communications over eight separate cellular phones utilized by individuals acquiring and selling drugs.

4. The investigation has led to the identification of Ismael GONZALEZ as a large quantity methamphetamine trafficker, with sources of supply around the southwest border and Mexico. Based on intercepted calls, the LDO identified two cellular telephones that GONZALEZ was using to coordinate the shipment and delivery of narcotics shipments.

5. On May 3, 2016 U.S. District Judge David Hale authorized the interception of wire communications over the first of GONZALEZ's cellular telephones, hereafter referred to as Target Telephone I. The LDO then identified and additional cellular telephone as an additional phone used by GONZALEZ, hereafter referred to as Target Telephone II.

6. On June 13, Judge Hale authorized the continued interception of wire communications and the initiation of electronic communication intercepts over Target Telephone I as well as the initiation of wire and electronic communication intercepts over Target Telephone II.

7. On June 29, 2016, Senior U.S. District Judge Charles R. Simpson, III authorized the interception of wire communications over a third cellular telephone utilized by GONZALEZ, hereafter referred to as Target Telephone III, as well as a cellular telephone utilized by Dante WATTS, hereafter referred to as Target Telephone IV.

8. To date interceptions have provided information about GONZALEZ's narcotics activities. Specifically, on May 7, 2016, GONZALEZ instructed members of his organization to meet Oscar ARGUETA at a business in the vicinity of Brooks Road and Interstate-65, where they retrieved thirty-eight (38) pounds of crystal methamphetamine, which ARGUETA had transported from the Southwest border.

9. Upon receipt of the methamphetamine, members of the GONZALEZ organization took the 38 pounds of methamphetamine to a body shop owned by Carlos CATALAN. At that time, the LDO believes that CATALAN loaded the 38 pounds of crystal methamphetamine, along with an additional eleven (11) pounds, which he was already in possession of, into a stash vehicle, which was utilized to conceal the narcotics during transport.

10. Once the vehicle was loaded with a total of 49 pounds of crystal methamphetamine, it was provided to Dante WATTS, a known narcotics trafficker in Louisville, KY.

11. Between May 12 and July 1, 2016, the LDO has intercepted a series of communications over GONZALEZ's cellular telephones in which he, WATTS, Carlos CATALAN and GONZALEZ's still unidentified source of supply had discussed the shipment of approximately $600,000 worth of suspected crystal methamphetamine and cocaine to Louisville, KY.

12. During this time, both GONZALEZ and WATTS traveled to Houston, TX in order to test the crystal methamphetamine before it was shipped to Louisville, KY. On this trip to Houston, WATTS was accompanied by Kiniki LUCAS who rented the hotel rooms at the Best Western Astor Suites in Houston.

13. Specifically, on July 1, 2016, GONZALEZ's received a text from his source of supply indicating that "the airplane parts are going to set sail." Based on this conversation, as well as previously intercepted calls, the LDO knew "airplane parts" to be a reference for cocaine. Following this conversation, GONZALEZ contacted WATTS, and informed him of the pending shipment, and informed him that he needed to collect a large sum of money and get it to him as soon as possible.

14. At approximately 22:02 hours, the LDO intercepted a conversation between GONZALEZ and a member of WATTS' organization in which WATTS had sent this individual with approximately $400,000 in US Currency to the shop owned by CATALAN. It is Affiants belief that Ariel CRUZ had meet WATTS' associate at the shop and retrieved the $400,000.

15. On July 2, 2016, at approximately 9:28 hours, GONZALEZ placed an outgoing call to an unidentified male with a Texas area code. During this conversation, the unknown male informed "the man is like an hour away." Based on this conversation, it was believed that the unknown male had informed GONZALEZ that ARGUETA would be arriving in Louisville in approximately one hour with a shipment of narcotics.

16. Following this conversation, GONZALEZ contacted two members of his organization, who the LDO believes to be Ariel CRUZ and Carlos CATALAN, and informed them that the shipment would be arriving shortly.

17. On July 2, 2016, at approximately 11:00 hours, members of the DEA LDO observed ARGUETA's tractor-trailer truck traveling northbound on Interstate-65 near the Bardstown exit. Surveillance was maintained on the truck until its arrival at the

Pilot gas station, 2050 E. Blue Lick Road, Shepherdsville, KY. Surveillance was maintained for a period, until ARGUETA pulled out of the Pilot, and merged back onto Interstate-65 northbound.

18. Surveillance then followed ARGUETA to 6309 Strawberry Lane, CATALAN's body shop, where surveillance observed CRUZ opening the gate for ARGUETA. Surveillance then observed ARGUETA backing into 6309 Strawberry Lane.

19. At that time, members of the DEA and LMPD executed a search warrant at 6309 Strawberry Lane, where ARGUETA, CRUZ and CATALAN were detained.

20. In a subsequent search of ARGUETA's tractor-trailer, members of the LDO discovered approximately thirty-one (31) kilograms of cocaine, which were in three separate bags laying on the bed in the cab, along with six (6) kilograms of heroin, which was hidden behind two separate speakers in the cab area of the truck. Following the seizure, members of law enforcement arrested ARGUETA, CATALAN, and CRUZ, and transported them to the DEA LDO for criminal processing.

21. A short time later, GONZALEZ was stopped leaving his residence, and subsequently placed under arrest. GONZALEZ was then transported to the DEA LDO for criminal processing.

22. Members of the Louisville Metro Police Department located Dante WATTS at the St. Mathews Mall, where he was arrested without incident, and taken to the DEA LDO for criminal processing.

5

23. In a subsequent search of 612 David's Drive, Shepherdsville, KY, which is a location associated with GONZALEZ, members of law enforcement discovered a large amount of US Currency, which is believed to be upwards of $500,000.

24. During a search of 709 Urton Woods, Louisville, KY, which was believed to be a stash location utilized by WATTS, law enforcement discovered a large sum of US Currency, believed to be upwards of $150,000, as well as approximately one pound of crystal methamphetamine in the residence. During a subsequent search of a Mercedes-Benz, which was parked in the driveway of the residence, law enforcement discovered another large sum of US Currency, believed to be upwards of $300,000.

25. During a search of 10517 Bay Pointe Court, Louisville, KY, which is a residence leased by Kiniki LUCAS, as well as a residence believed to be utilized by WATTS as a stash location, members of law enforcement seized approximately one pound of cocaine, along with approximately one pound of heroin, which was discovered in a master bedroom closet, which contained LUCAS' clothing. During initial questioning, LUCAS informed that the residence was hers, however upon the discovery of the narcotics, LUCAS stated she was unaware as to whose residence it was. Subsequent to the discovery of narcotics, LUCAS was placed under arrest ad transported to the DEA LDO for criminal processing.

26. Based on the above information, it is believed that GONZALEZ, WATTS, CATALAN, LUCAS, CRUZ, and ARGUETA conspired to possess with the intent to distribute cocaine, methamphetamine and heroin in violation of Title 21, United States Code 846 and 841 (a) (1).

Further your affiant sayeth naught.

Brian D. Sanders, Special Agent
U.S. Drug Enforcement Administration

Sworn to me and subscribed before me this $\underline{5\text{th}}$ day of July, 2016

COLIN H. LINDSAY
United States Magistrate Judge

7