## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                         CRIMINAL NO. 3:16-CR-00082-CHB

ISMAEL GONZALEZ
**DANTE DEWAYNE WATTS  - 02**                              DEFENDANT
ARIEL CRUZ
OSCAR ARGUETA
CARLOS CATALAN
KINIKI KASHUNDA LUCAS
JOLIE JOHNSON

**CO-DEFENDANT DANTE WATTS'S MOTION TO SUPPRESS/EXCLUDE ANY AND ALL EVIDENCE (DIRECTLY OR INDIRECTLY) SEARCHED AND SEIZED BY LAW ENFORCEMENT IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND UNITED STATES SUPREME COURT OPINIONS IN CARPENTER V. UNITED STATES AND RILEY V. CALIFORNIA**

Comes the Co-Defendant, Dante Dewayne Watts, by counsel, Frank Mascagni, III, and hereby moves this Court to issue an Order to suppress/exclude any and all evidence unlawfully seized by law enforcement in the investigation of this case. As grounds to support this Motion, counsel states as follows:

1.     This case began by the filing of a Criminal Complaint on July 5, 2016 (Docket #1) alleging a drug conspiracy commencing March of 2016 followed by an Indictment filed July 6, 2016 (Docket #18) charging a criminal conspiracy "Beginning in or about May 3, 2016, and continuing to on or about July 2, 2016, …".

2.     The government sought a Superseding Indictment, which was filed of record on June 27, 2017 (Docket #118) adding additional charges against co-defendant, Dante Watts.

3.     On April 25, 2018, Chief Judge Joseph H. McKinley, Jr., Pursuant to GO 2018-03, Case reassigned to Judge Claria H. Boom for all further proceedings. Judge David J. Hale no longer assigned to case.

4.     This matter is presently set for trial on August 20, 2018.

5.  During the discovery phase of the case, there have been voluminous amounts of materials provided by the United State: including by not limited to, approximately 22,000 pages of documents (including financial records), photographs, videotapes, audiotapes, hundreds of recorded telephone conversations pursuant to federal wire taps, seizure of approximately 27 electronic devices, including cell phones, which were downloaded by the government, seizures of dozens of kilograms of narcotic drugs, seizures of hundreds of thousands of dollars, etc.

6.  In recent discussions with the United States prosecutors on July 18, 2018, counsel discussed the recent rulings by the United States Supreme Court: Carpenter v. United States, and a prior ruling of the United States Supreme Court: Riley vs. California and their potential applicability to this case. Based on that discussion, in an abundance of caution, counsel for Mr. Watts, made a decision to file this motion seeking this Court's opinion as to the applicability of these two United States Supreme Court Opinions.

7.  Carpenter v. United States, No. 16-402, 585 U.S. \_\_\_\_, was a landmark United States Supreme Court case concerning the privacy of historical cellphone location records. This Opinion was rendered on June 22, 2018. A copy of the syllabus is reproduced below:

## SUPREME COURT OF THE UNITED STATES

Syllabus

### CARPENTER *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 16–402. Argued November 29, 2017—Decided June 22, 2018

Cell phones perform their wide and growing variety of functions by continuously connecting to a set of radio antennas called "cell sites." Each time a phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). Wireless carriers collect and store this information for their own business purposes. Here, after the FBI identified the cell phone numbers of several robbery suspects, prosecutors were granted court orders to obtain the suspects' cell phone records under the Stored Communications Act. Wireless carriers produced CSLI for petitioner Timothy Carpenter's phone, and the Government was able to obtain 12,898 location points cataloging Carpenter's movements over 127 days—an average of 101 data points per day. Carpenter moved to suppress the data, arguing that the Government's seizure of the records without obtaining a warrant supported by probable cause violated the Fourth Amendment. The District Court denied the motion, and prosecutors used the records at trial to show that Carpenter's phone was near four of the robbery locations at the time those robberies occurred. Carpenter was convicted. The Sixth Circuit affirmed, holding that Carpenter lacked a reasonable expectation of privacy in the location information collected by the FBI because he had shared that information with his wireless carriers.

*Held*:
  1. The Government's acquisition of Carpenter's cell-site records was a Fourth Amendment search. Pp. 4–18.

(a) The Fourth Amendment protects not only property interests but certain expectations of privacy as well. *Katz* v. *United States,* 389 U. S. 347, 351. Thus, when an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is

2 CARPENTER *v.* UNITED STATES

Syllabus

prepared to recognize as reasonable," official intrusion into that sphere generally qualifies as a search and requires a warrant supported by probable cause. *Smith* v. *Maryland*, 442 U. S. 735, 740 (internal quotation marks and alterations omitted). The analysis regarding which expectations of privacy are entitled to protection is informed by historical understandings "of what was deemed an unreasonable search and seizure when [the Fourth Amendment] was adopted." *Carroll* v. *United States,* 267 U. S. 132, 149. These Found-ing-era understandings continue to inform this Court when applying the Fourth Amendment to innovations in surveillance tools. See, *e.g., Kyllo* v. *United States,* 533 U. S. 27. Pp. 4–7.

(b) The digital data at issue—personal location information maintained by a third party—does not fit neatly under existing precedents but lies at the intersection of two lines of cases. One set addresses a person's expectation of privacy in his physical location and movements. See, *e.g., United States* v. *Jones,* 565 U. S. 400 (five Justices concluding that privacy concerns would be raised by GPS tracking). The other addresses a person's expectation of privacy in information voluntarily turned over to third parties. See *United States* v. *Miller,* 425 U. S. 435 (no expectation of privacy in financial records held by a bank), and *Smith,* 442 U. S. 735 (no expectation of privacy in records of dialed telephone numbers conveyed to telephone company). Pp. 7–10.

(c) Tracking a person's past movements through CSLI partakes of many of the qualities of GPS monitoring considered in *Jones*—it is detailed, encyclopedic, and effortlessly compiled. At the same time, however, the fact that the individual continuously reveals his location to his wireless carrier implicates the third-party principle of *Smith* and *Miller*. Given the unique nature of cell-site records, this Court declines to extend *Smith* and *Miller* to cover them. Pp. 10–18.

(1) A majority of the Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements. Allowing government access to cell-site records—which "hold for many Americans the 'privacies of life,'" *Riley* v. *California,* 573 U. S. ___, ___—contravenes that expectation. In fact, historical cell-site records present even greater privacy concerns than the GPS monitoring considered in *Jones*: They give the Government near perfect surveillance and allow it to travel back in time to retrace a person's whereabouts, subject only to the five-year retention policies of most wireless carriers. The Government contends that CSLI data is less precise than GPS information, but it thought the data accurate enough here to highlight it during closing argument in Carpenter's trial. At any rate, the rule the Court adopts "must take account of more sophisticated systems that are already in use or in

3 Cite as: 585 U. S. ____ (2018)

Syllabus

development," *Kyllo,* 533 U. S., at 36, and the accuracy of CSLI is rapidly approaching GPS-level precision. Pp. 12–15.

    (2) The Government contends that the third-party doctrine governs this case, because cell-site records, like the records in *Smith* and *Miller*, are "business records," created and maintained by wireless carriers. But there is a world of difference between the limited types of personal information addressed in *Smith* and *Miller* and the exhaustive chronicle of location information casually collected by wireless carriers.

  The third-party doctrine partly stems from the notion that an individual has a reduced expectation of privacy in information knowingly shared with another. *Smith* and *Miller*, however, did not rely solely on the act of sharing. They also considered "the nature of the particular documents sought" and limitations on any "legitimate 'expecta-tion of privacy' concerning their contents." *Miller,* 425 U. S., at 442. In mechanically applying the third-party doctrine to this case the Government fails to appreciate the lack of comparable limitations on the revealing nature of CSLI.

  Nor does the second rationale for the third-party doctrine—voluntary exposure—hold up when it comes to CSLI. Cell phone location information is not truly "shared" as the term is normally understood. First, cell phones and the services they provide are "such a pervasive and insistent part of daily life" that carrying one is indispensable to participation in modern society. *Riley,* 573 U. S., at ___. Second, a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the user's part beyond powering up. Pp. 15–17.

    (d) This decision is narrow. It does not express a view on matters not before the Court; does not disturb the application of *Smith* and *Miller* or call into question conventional surveillance techniques and tools, such as security cameras; does not address other business records that might incidentally reveal location information; and does not consider other collection techniques involving foreign affairs or national security. Pp. 17–18.

  2. The Government did not obtain a warrant supported by probable cause before acquiring Carpenter's cell-site records. It acquired those records pursuant to a court order under the Stored Communications Act, which required the Government to show "reasonable grounds" for believing that the records were "relevant and material to an ongoing investigation." 18 U. S. C. §2703(d). That showing falls well short of the probable cause required for a warrant. Consequently, an order issued under §2703(d) is not a permissible mechanism for accessing historical cell-site records. Not all orders compelling the production of documents will require a showing of probable cause. A

4 CARPENTER *v.* UNITED STATES

Syllabus

warrant is required only in the rare case where the suspect has a legitimate privacy interest in records held by a third party. And even though the Government will generally need a warrant to access CSLI, case-specific exceptions—*e.g.*, exigent circumstances—may support a warrantless search. Pp. 18–22.

819 F. 3d 880, reversed and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined. THOMAS, J., filed a dissenting opinion. ALITO, J., filed a dissenting opinion, in which THOMAS, J., joined. GORSUCH, J., filed a dissenting opinion.

8. Prior to this Opinion, the Supreme Court rendered an Opinion in Riley v. California in 2014, which held that law enforcement, must secure a search warrant prior to searching the contents of an individual's cell phone. The Syllabus of that Opinion is reproduced below:

> **Riley** v. **California**, *573 U.S. __ (2014) is a landmark United States Supreme Court case in which the Court unanimously held that the warrantless search and seizure of digital contents of a cell phone during an arrest is unconstitutional.*
>
> *Riley v. California; 134 S. Ct. 2473 (2014)*

## SUPREME COURT OF THE UNITED STATES

Syllabus

### RILEY *v.* CALIFORNIA

CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT, DIVISION ONE

No. 13–132. Argued April 29, 2014—Decided June 25, 2014*

In No. 13–132, petitioner Riley was stopped for a traffic violation, which eventually led to his arrest on weapons charges. An officer searching Riley incident to the arrest seized a cell phone from Riley's pants pocket. The officer accessed information on the phone and noticed the repeated use of a term associated with a street gang. At the police station two hours later, a detective specializing in gangs further examined the phone's digital contents. Based in part on photographs and videos that the detective found, the State charged Riley in connection with a shooting that had occurred a few weeks earlier and sought an enhanced sentence based on Riley's gang membership. Riley moved to suppress all evidence that the police had obtained from his cell phone. The trial court denied the motion, and Riley was convicted. The California Court of Appeal affirmed. In No. 13–212, respondent Wurie was arrested after police observed him participate in an apparent drug sale. At the police station, the officers seized a cell phone from Wurie's person and noticed that the phone was receiving multiple calls from a source identified as "my house" on its external screen. The officers opened the phone, accessed its call log, determined the number associated with the "my house" label, and traced that number to what they suspected was Wurie's apartment. They secured a search warrant and found drugs, a firearm and ammunition, and cash in the ensuing search. Wurie was then charged with drug and firearm offenses. He moved to suppress the evidence obtained from the search of the apartment. The District Court denied the motion, and Wurie was convicted. The

---

\*Together with No. 13–212, *United States* v. *Wurie*, on certiorari to the United States Court of Appeals for the First Circuit. 2 RILEY *v.* CALIFORNIA

Syllabus

First Circuit reversed the denial of the motion to suppress and vacated the relevant convictions.

*Held*: The police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested. Pp. 5–28.

(a) A warrantless search is reasonable only if it falls within a specific exception to the Fourth Amendment's warrant requirement. See *Kentucky* v. *King*, 563 U. S. \_\_\_, \_\_\_. The well-established exception at issue here applies when a warrantless search is conducted incident to a lawful arrest.

Three related precedents govern the extent to which officers may search property found on or near an arrestee. *Chimel* v. *California*, 395 U. S. 752, requires that a search incident to arrest be limited to the area within the arrestee's immediate control, where it is justified by the interests in officer safety and in preventing evidence destruction. In *United States* v. *Robinson*, 414 U. S. 218, the Court applied the *Chimel* analysis to a search of a cigarette pack found on the arrestee's person. It held that the risks identified in *Chimel* are present in all custodial arrests, 414 U. S., at 235, even when there is no specific concern about the loss of evidence or the threat to officers in a particular case, *id.,* at 236. The trilogy concludes with *Arizona* v. *Gant*, 556 U. S. 332, which permits searches of a car where the arrestee is unsecured and within reaching distance of the passenger compartment, or where it is reasonable to believe that evidence of the crime of arrest might be found in the vehicle, *id.,* at 343. Pp. 5–8.

(b) The Court declines to extend *Robinson*'s categorical rule to searches of data stored on cell phones. Absent more precise guidance from the founding era, the Court generally determines whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming* v. *Houghton*, 526 U. S. 295, 300. That balance of interests supported the search incident to arrest exception in *Robinson*. But a search of digital information on a cell phone does not further the government interests identified in *Chimel*, and implicates substantially greater individual privacy interests than a brief physical search. Pp. 8–22.

(1) The digital data stored on cell phones does not present either *Chimel* risk. Pp. 10–15.

(i) Digital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape. Officers may examine the phone's physical aspects to ensure that it will not be used as a weapon, but the data on the phone can endanger no one. To the extent that a search of cell phone data

3 Cite as: 573 U. S. \_\_\_\_ (2014)

Syllabus

might warn officers of an impending danger, *e.g.,* that the arrestee's confederates are headed to the scene, such a concern is better addressed through consideration of case-specific exceptions to the warrant requirement, such as exigent circumstances. See, *e.g., Warden, Md. Penitentiary* v. *Hayden*, 387 U. S. 294, 298–299. Pp. 10–12.

(ii) The United States and California raise concerns about the destruction of evidence, arguing that, even if the cell phone is physically secure, information on the cell phone remains vulnerable to remote wiping and data encryption. As an initial matter, those broad concerns are distinct from *Chimel*'s focus on a defendant who responds to arrest by trying to conceal or destroy evidence within his reach. The briefing also gives little indication that either problem is prevalent or that the opportunity to perform a search incident to arrest would be an effective solution. And, at least as to remote wiping, law enforcement currently has some technologies of its own for combatting the loss of evidence. Finally, law enforcement's remaining concerns in a particular case might be addressed by responding in a targeted manner to urgent threats of remote wiping, see *Missouri* v. *McNeely*, 569 U. S. \_\_\_, \_\_\_, or by taking action to disable a phone's locking mechanism in order to secure the scene, see *Illinois* v. *McArthur*, 531 U. S. 326, 331–333. Pp. 12–15.

(2) A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but more substantial privacy interests are at stake when digital data is involved. Pp. 15–22.

(i) Cell phones differ in both a quantitative and a qualitative sense from other objects that might be carried on an arrestee's person. Notably, modern cell phones have an immense storage capacity. Before cell phones, a search of a person was limited by physical realities and generally constituted only a narrow intrusion on privacy. But cell phones can store millions of pages of text, thousands of pictures, or hundreds of videos. This has several interrelated privacy consequences. First, a cell phone collects in one place many distinct types of information that reveal much more in combination than any isolated record. Second, the phone's capacity allows even just one type of information to convey far more than previously possible. Third, data on the phone can date back for years. In addition, an element of pervasiveness characterizes cell phones but not physical records. A decade ago officers might have occasionally stumbled across a highly personal item such as a diary, but today many of the more than 90% of American adults who own cell phones keep on their person a digital record of nearly every aspect of their lives. Pp. 17–

21. 4 RILEY *v.* CALIFORNIA

Syllabus

(ii) The scope of the privacy interests at stake is further complicated by the fact that the data viewed on many modern cell phones may in fact be stored on a remote server. Thus, a search may extend well beyond papers and effects in the physical proximity of an arrestee, a concern that the United States recognizes but cannot definitively foreclose. Pp. 21–22.

(c) Fallback options offered by the United States and California are flawed and contravene this Court's general preference to provide clear guidance to law enforcement through categorical rules. See *Michigan* v. *Summers*, 452 U. S. 692, 705, n. 19. One possible rule is to import the *Gant* standard from the vehicle context and allow a

warrantless search of an arrestee's cell phone whenever it is reasonable to believe that the phone contains evidence of the crime of arrest. That proposal is not appropriate in this context, and would prove no practical limit at all when it comes to cell phone searches. Another possible rule is to restrict the scope of a cell phone search to information relevant to the crime, the arrestee's identity, or officer safety. That proposal would again impose few meaningful constraints on officers. Finally, California suggests an analogue rule, under which officers could search cell phone data if they could have obtained the same information from a pre-digital counterpart. That proposal would allow law enforcement to search a broad range of items contained on a phone even though people would be unlikely to carry such a variety of information in physical form, and would launch courts on a difficult line-drawing expedition to determine which digital files are comparable to physical records. Pp. 22–25.

(d) It is true that this decision will have some impact on the ability of law enforcement to combat crime. But the Court's holding is notthat the information on a cell phone is immune from search; it is that a warrant is generally required before a search. The warrant requirement is an important component of the Court's Fourth Amendment jurisprudence, and warrants may be obtained with increasing efficiency. In addition, although the search incident to arrest exception does not apply to cell phones, the continued availability of the exigent circumstances exception may give law enforcement a justification for a warrantless search in particular cases. Pp. 25–27.

No. 13–132, reversed and remanded; No. 13–212, 728 F. 3d 1, affirmed.

ROBERTS, C. J., delivered the opinion of the Court, in which SCALIA, KENNEDY, THOMAS, GINSBURG, BREYER,

SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed an opinion concurring in part and concurring in the judgment.

9. The Defendant requests that this Court review this Motion and sited opinions and set this matter for an evidentiary hearing and/or oral arguments by counsel after the filing of the Response Brief by the United States, relative to the exclusion of any and all evidence that the United States intends to offer at trial, seized from a cell tower location or from a cell phone without a search warrant supported by probable cause.

Respectfully submitted,

*/s/ Frank Mascagni, III*
Frank Mascagni, III
Attorney at Law
228 South Seventh Street
Louisville KY  40202
(502) 583-2831
Fax: (502) 583-3701
Email: frankmascagniiii@hotmail.com
*Counsel for Co-Defendant,*
*Dante Dewayne Watts*

CERTIFICATE OF SERVICE

I hereby certify that this pleading was filed on this the 22nd day of July, 2018 using the ECF system which will notify Robert B. Bonar and Amy Sullivan, AUSA and all co-counsel of record.

/s/ Frank Mascagni, III
Counsel for Defendant Watts