# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| ) | |
| **v.** ) | No. 3:16-cr-82-DJH |
| ) | |
| ) | |
| **Ismael Gonzalez,** ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## Motion to Suppress Illegal Seized Evidence

Comes now Ismael Gonzalez, by and through undersigned counsel, and hereby moves this Honorable Court to enter an order suppressing illegal seized evidence obtained during the service of a search warrant.

### I.   Introduction

The Government obtained a search warrant to search the auto shop that was the target of this investigation. The warrant authorized search of the building and grounds. Sitting *outside* of the fenced area of the auto shop was a tractor-trailer truck that law enforcement chose to search as well. The warrant did not authorized law enforcement to search a truck that was not on the property of the auto shop. Being undeterred, law enforcement searched the truck anyway and located a cache of evidence the Government intends to use at trial here.

Gonzalez contends that this search violated the scope of the search warrant and the

Fourth Amendment, as law enforcement lacked the requisite probable cause necessary to search the vehicle, but relied on the search warrant that did not authorize such a search.

This violates the Fourth Amendment, as such Gonzalez respectfully moves this Honorable Court to suppress all evidence seized during this illegal search.

## II.   Legally Significant Facts

On May 3, 2016, Special Agent Brian Sanders with the U.S. Drug Enforcement Administration signed an affidavit in support of a Title III application for a wiretap. In the affidavit Agent Sanders relied on stale information provided by DEA informant James Ronald Muse. More than a year prior to the affidavit, Informant Muse was debriefed by the DEA and allegedly disclosed information that Ismael Gonzalez was distributing methamphetamine throughout Louisville and other areas. Informant Muse claimed Gonzalez essentially forced him to begin distributing methamphetamine to avoid Muse's son from being harmed over a drug debt.

Informant Muse claimed Gonzalez was purchasing methamphetamine for $17,000.00 a pound and then reselling it, at least as to Muse, in up to 20-pound shipments. The DEA apparently did not act on this information.

In the affidavit, Agent Sanders outlined several telephone calls that were intercepted under a Title III wiretap warrant on Ruiz. The call between Gonzalez and Ruiz discussed the sale of a vehicle. DEA agents surveilled Ruiz, believing Ruiz was leaving a vehicle at a location with money inside it, so that Gonzalez could put the drugs in the vehicle and collect the money. Ruiz actually went to an auto repair shop after discussing buying a

vehicle from Gonzalez – who was in the business of repairing vehicles and selling them – and the surveillance lost track of Ruiz in traffic.

Using these wiretaps, law enforcement sought a search warrant of an auto shop allegedly operated by Gonzalez. The warrant was obtained, but the scope was limited to the search of the building and grounds surround it. A fenced area delineated the auto shop's grounds. While serving the warrant, there was a tractor-trailer that was outside of the fence of the auto shop. Law enforcement searched the tractor-trailer, despite the fact no probable cause was possessed at the time of the search and the warrant did not authorize the search of that tractor-trailer.

### III. Law & Argument

#### A. When serving a search warrant, officer cannot legally exceed the scope of the warrant.

The search warrant authorized law enforcement to search in areas of the commercial property where evidence may be located. The warrant *did not* authorize law enforcement to search vehicles that were not on the premises. When law enforcement act in such a manner, the Sixth Circuit opines the warrant devolves to a "general search."

The phrase "general search" embodies a specific Fourth Amendment term of art, accompanied by particular rules, policies, and remedies. A search pursuant to a valid warrant may devolve into an invalid general search if the officers "flagrant[ly] disregard ... the limitations of [the] search warrant." *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir.1985). For purposes of general search analysis, the Sixth Circuit will find that an

officer flagrantly disregards the limitations of a warrant only where he "exceed[s] the scope of the warrant in the places searched " (rather than the items seized). *See Waller v. Georgia*, 467 U.S. 39, 43 n. 3 (1984) (emphasis added). The test for determining if the officers engaged in an impermissible general search is whether their search unreasonably exceeded the scope of the warrant. *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir.1999).

Here, law enforcement searched a tractor-trailer that was sitting outside the fence of the area they were authorized to search. Thus, if officers did not possess specific probable cause the search the trailer, then the search of the vehicle violated the Fourth Amendment.

### B. Law Enforcement did not have probable cause or consent to search the tractor-trailer

Probable cause is a fluid concept. *Maryland v. Pringle*, 540 U.S. 366, 370-371 (2003) (citations omitted). It is not subjected to rigorous and hyper-technical readings or a "neat set of legal rules." *Id.* Rather, probable cause, as its name implies, is based upon probabilities. The Supreme Court requires a reviewing court to look to the "totality of the circumstances" law enforcement faced when making a probable cause determination. *Illinois v. Gates*, 462 U.S. 213.

Here, even if the warrant to search the auto-shop was valid, the search of the tractor-trailer exceeded the authorization by the issuing magistrate. Moreover, there are no probable cause averments that could have been included in the warrant to establish probable cause to search the tractor-trailer, because none existed.

There is little difference between this situation and if law enforcement were to search every person that walked by the auto-shop when the search warrant was being

served. Although there is no need for extraordinary or exigent circumstances exists to apply the automobile exception to the warrant requirement, so long as the vehicle involved is mobile and the searching officer has probable cause to believe that the fruits of crime may be found therein. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999).

However, the probable cause determination under this exception is in all respects identical to the probable cause analysis employed in search warrant analysis, with the exception that the strong preference that exists for upholding search warrants obviously does not apply in the context of the warrantless automobile exception. Otherwise, probable cause in this context is merely reasonable grounds for belief supported by less than *prima facie* proof but more than mere suspicion that evidence or fruits of criminal activity will be found in the vehicle involved at the time of the search. *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir.1998); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998).

Law enforcement has no probable cause to search a vehicle outside of the auto shop premises. There was nothing about the tractor-trailer that would lead a reasonably prudent person to believe it contained evidence of a crime. Rather, law enforcement relied on the authority of the warrant to search, which violates the Fourth Amendment.

**ii. Because this would constitute a general search the entire search should be suppressed.**

The remedy for a general search and illegal search vary somewhat. "The prohibition against general searches ... serves primarily as a protection against unjustified intrusions on privacy," *Horton v. California*, 496 U.S. 128, 141, 110 S.Ct. 2301, 110 L.Ed.2d 112

(1990), and the broad remedy for such a sweeping Fourth Amendment violation is "the suppression of all evidence seized during the search," *Lambert*, 771 F.2d at 93 (emphasis added).

In contrast, the prohibition against the unlawful seizure of a particular item during an otherwise valid search does not invade the defendant's privacy interest but merely "deprives [him] of dominion over his ... property," *Horton*, 496 U.S. at 133, and the narrow remedy for such a concrete Fourth Amendment violation is the suppression of only the unlawfully seized evidence, see *Waller*, 467 U.S. at 43 n. 30. Thus, where the officers unlawfully seize certain items but do not flagrantly disregard the limits of the warrant by unreasonably searching places not authorized in the warrant, the court must suppress the unlawfully seized items, but "there is certainly no requirement that lawfully seized evidence be suppressed as well." *Waller*, 467 U.S. at 43 n. 3.

Here, officers flagrantly disregarded the limits of the warrant by unreasonably searching the tractor-trailer, which a reasonable officer would have known was not authorized by the warrant. Gonzalez, at a minimum, moves to have the items in the tractor-trailer seized, but because of the flagrant disregard for the limitations of the warrant, he insists the entire search should be suppressed for this violation.

## IV. Conclusion

Gonzalez moves this Honorable Court to suppress the direct and derivative evidence obtained through the illegal search of the tractor-trailer that was no on the premises when the search warrant was served. Officers had no probable cause to search the vehicle, thus the evidence seized in violation of the Fourth Amendment should be

suppressed. Because the search devolved to a general search by officers relying on the warrant to search the tractor-trailer, the search lawfully becomes a general search.

Therefore, the remedy when law enforcements commit a general search is suppression of both the lawfully seized evidence and unlawfully seized evidence. Gonzalez respectfully requests this Honorable Court issue an Order suppressing such.

Respectfully Submitted,

\_\_\_/s/ Rob Eggert_____
**Rob Eggert**
*Lead Attorney for Ismael Gonzalez*
600 W. Main Street, Suite 300
Louisville, KY 40202
(502) 589-6190

\_\_\_/s/ John Tennyson_____
**John Tennyson** (TN BPR# 32777)
*Co-Counsel for Ismael Gonzalez*
611 Commerce Street, Suite 2609
Nashville, TN 37203
(615) 506-3108
jtennyson@nashville-law.com

**Certificate of Service**

I, Robb Eggert, do hereby certify that on September 4, 2018, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

\_\_/s/ Rob Eggert_____
**Rob Eggert**