UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                         PLAINTIFF


v.                                                    CRIMINAL NO.3:16CR-82-CHB
                                                          *Electronically Filed*


DANTE DEWAYNE WATTS                                              DEFENDANT


## MOTION FOR PRELIMINARY ORDER OF FORFEITURE

The United States respectfully requests that the Court enter the attached Preliminary Order of Forfeiture.   As explained below, the preliminary order is necessary to protect the United States' ability to collect forfeited property and to protect third parties who may have competing interests in that property.

On December 20, 2019, a Jury found Defendant Dante Watts guilty of violations of 21 U.S.C. § 841(b)(1)(A), 21 U.S.C. § 846, and 18 U.S.C. § 1956(h), as charged in Counts 1 and 3 of the Second Superseding Indictment.   Pursuant to 21 U.S.C. § 853, the property described in the forfeiture notice in the Second Superseding Indictment and the Preliminary Order of Forfeiture is forfeitable to the United States.

The Preliminary Order of Forfeiture begins the process of collecting the property authorized by 21 U.S.C. § 853.   The proposed order sets out the facts justifying the forfeiture of defendant's property, permits the United States Marshals Service, or any duly authorized law enforcement agency to secure the property, and describes the procedure governing the ancillary proceedings in which innocent third parties may assert ownership claims to the forfeited property. 21 U.S.C. § 853;   Fed. R. Crim. P. 32.2.   Until the Court enters a preliminary order of forfeiture, the law prevents third parties from defending their interests in the forfeited property.   21 U.S.C.

§ 853(k).   Approval of the preliminary order is likewise a prerequisite to the United States' ability

to conduct necessary discovery and seek the forfeiture of substitute assets, if such forfeiture is

necessary.   21 U.S.C. § 853(m)-(p).

The following property represents proceeds of and property that facilitated the drug

conspiracy for which the jury found Watts guilty:

Contents of Kentucky Telco Credit Union Account ($89,676.89)

Watts filed the only claim to the $89,676.89 seized from the KY Telco Account in the

related civil forfeiture proceedings. (Attachment A: Trial Exhibit 103 Claim).   The contents of the

account ($89,676.89) are subject to forfeiture under 21 U.S.C. § 853(a)(1) as proceeds of drug

trafficking.

During trial, IRS Special Agent JR Stansfield testified about the summary chart he created,

which showed that from 2015 through 2016,[1] Watts' total income reported was $117,913.00 but

his expenditures were $4,255,366. (Attachment B:   Trial Exhibit 99 Expenditures Summary).

While Watts made over 3.5 million in cash purchases at various casinos (from May 2015 through

April 2016), Agent Stansfield testified that Watts did not win any significant sums while he

gambled and in fact lost a significant amount of money.   (DN 553 TR at  9 and 11).

Furthermore, Watts never reported gambling winnings to the IRS or in his credit applications to

other businesses.   (DN 553 TR at 16-19).   Even in his sworn claim, Watts states "I have been

employed in the cleaning business, as well as, the commercial and real estate industry.   Over this

time, I have earned significant wages, commissions, and fees associated with my employment,

---

[1] The Court granted Watts' motion to limit the time period of the charts/financial information to May 2015 through
July 2016.   But with respect to the total income reported, by agreement of the parties as set forth on the record and
with consent of the Court, the total amount of income reported for TY 2015 and TY 2016 was included in the
chart(s).   The time period for everything else was May 2015 through July 2016.

including the items claimed above."   (Attachment A Trial Exhibit 103:   Claim Affidavit at 2).

Watts' "unexplained wealth" from May 2015 through July 2016 is staggering-- $117,913.00 in reported income versus $4,255,366.00 in expenditures. (Attachment B:   Trial Exhibit 99 Expenditures Summary).   In the Sixth Circuit, as well as other circuits[2], evidence of unexplained and/or unreported wealth in drug trafficking and money laundering cases is evidence that the income was derived from drug trafficking. *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999); *United States v. Carter*, 969 F.2d 197, 200 (6th Cir. 1992).   Furthermore, as set forth in the PSR, before the current federal drug conspiracy conviction, Watts had been previously convicted of drug trafficking three (3) times and possession of a controlled substance one (1) time, since 1989.

The drug conspiracy for which the jury found Watts guilty began around May 3, 2016. DEA intercepted Gonzalez and Watts' conversations about a drug delivery on May 7 via a court authorized wiretap warrant.   Agents testified that they were unable to seize the forty-nine (49) kilos that Watts and Gonzalez discussed on the wire (and delivered to Catalan's shop on May 7), because their surveillance was detected at the meeting point and they had limited personnel. In

---

[2] *See, e.g.*, *United States v. Monaco*, 194 F.3d 381, 387 (2d Cir. 1999) (proof that defendant is living far above means provided by legitimate income is of great probative value in establishing that he is spending drug proceeds); *United States v. Webster*, 960 F.2d 1301, 1308 (5th Cir. 1992) (evidence of differential between drug dealer's legitimate income and cash outflow sufficient to establish that cash is drug proceeds); *United States v. Colon*, 919 F.3d 510 (7th Cir. 2019) (where defendant commingled proceeds from drug trafficking with income from legitimate business, evidence that cash deposits totaled $44,293 but defendant's business earned only $25,073 was sufficient to establish that at least some funds involved in each deposit charged as money laundering violations involved drug sale proceeds); *United States v. Cruz*, 993 F.2d 164, 167 (8th Cir. 1993) (lack of sufficient legitimate income to support cash expenditures supports finding that cash used to buy vehicle was proceeds of marijuana trafficking); *United States v. Hardwell*, 80 F.3d 1471, 1483 (10th Cir. 1996) (evidence that defendant was engaged in drug trafficking and had insufficient legitimate income to produce the money used in the financial transaction was sufficient).

early July, Gonzalez and Watts discussed another drug delivery, and Watts' payment of $400,000, which Jolie Johnson delivered as discussed on the wiretap. The agents ultimately seized thirty-one (31) kilograms of cocaine, and over four (4) kilograms of heroin from Argueta's semi at Catalan's shop. The agents also seized the $400,000 (approximately $350,000 of which was found in Gonzalez's place in Bullitt County and $50,000 was found at a residence used by Gonzalez)—which was the factual basis for Watts' money laundering conviction in Count 3.[3]

Watts' unexplained wealth over a short time period, coupled with his past convictions and current convictions for a drug trafficking and a money laundering, is overwhelming evidence that the contents of the Kentucky Telco account (in addition to the other currency and property seizures listed below) are drug proceeds. Consequently, the contents of the account must be forfeited under 21 U.S.C. § 853(a)(1).

Real Property located at Blackthorn Trace

During a search of Watts' residence at Blackthorn Trace, DEA Special Agent Brian Sanders testified that agents found six (6) kilos of fentanyl, several baggies of fentanyl, two firearms and ammunition and a Breitling for Bentley Motors Special Edition Certified Chronometer Watch. Watts filed the only claim to Blackthorn Trace in the related civil forfeiture proceedings. (Attachment A: Trial Exhibit 103 Claim).

Six (6) kilos of fentanyl was found in open tins in the oven, which is commonly used to mix with heroin (over four (4) kilos of heroin was seized from co-defendant Oscar Argueta's semi). A firearm was stashed on top of the kitchen cabinet where baggies of fentanyl were also found. A firearm and ammunition were also found in the garage, along with empty kilo wrappers. Agents

---

[3] No one filed a claim to this money and DEA administratively forfeited it.

located several blenders utilized to mix drugs in the kitchen, multiple boxes of plastic baggies, high tech surveillance installed around the house, and a money counter was also found in the home. From the evidence at trial, it is clear Watts used his home to store, mix, and process controlled substances for sale. The fentanyl was prepped waiting for the new delivery of drugs Watts ordered, which was seized from Argueta's semi. Furthermore, this home was purchased during the time frame of drug conspiracy.

From the evidence at trial, there can be no doubt that Watts was using this property to facilitate the drug trafficking conspiracy for which he was convicted. Furthermore, he purchased the real property during the conspiracy. Therefore, the real property is subject to forfeiture under 21 U.S.C. § 853(a)(1) and (2) as both facilitating property and proceeds of drug trafficking.

Taurus International semi-automatic Pistol, Serial #TVJ78651, two magazines
and ammunition and a FNH USA, LLC semi-automatic Pistol, Serial #GKU0055953,
magazine and ammunition; a Breitling for Bentley Motors Special Edition Certified
Chronometer Watch in 18kt Yellow Gold with 596 Full Cut Diamonds

As mentioned in the previous paragraph, Agents seized these two firearms and assorted ammunition and the Breitling watch from Watts' residence on Blackthorn. Watts filed the only claim to the Breitling watch during the related civil forfeiture proceedings. (Attachment A: Trial Exhibit 103 Claim). No one filed a claim to the firearms and assorted ammunition. For the reasons stated above regarding the forfeiture of the account and Blackthorn Trace, this property is subject to forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2) as facilitating property and proceeds of drug trafficking.

<u>$195,810.00 and $230,085.00 in United States Currency</u>

Evidence introduced at trial showed that officers seized 375 grams of methamphetamine, 14 bottles of Quinine (commonly used to cut heroin), and $195,810.00 in U.S. currency wrapped in a scarf, during the search of Watts' sister Jolie Johnson's residence on Urton Woods Way, in Louisville.   LMPD Sergeant Thomas Schardein testified that $195,810 was found in the same closet as the 375 grams of methamphetamine. Sergeant Schardein further testified that $230,085.00 in U.S. currency was found inside a safe in the trunk of a Mercedes found at Urton Woods Way. Watts filed the only claim to the $195,810.00 and $230,085.00 in United States Currency in the related civil forfeiture proceedings. (Attachment A: Trial Exhibit 103 Claim).   Officers also found $38,980 located in a safe in the trunk of a vehicle that was registered to Watts and parked at Urton Woods Way (no one filed a claim to this money).    For the reasons stated above regarding the forfeiture of the account and Blackthorn Trace, this property is subject to forfeiture pursuant to 21 U.S.C. § 853(a)(1) as proceeds of drug trafficking.

<u>$2,448.00 in United States Currency</u>

Retired LMPD Officer Tremont Banks testified that cocaine, fentanyl, two (2) firearms and ammunition, a scale, and $2,448.00 in U.S. currency was found during a search of co-defendant Kiniki Lucas' residence on Bay Pointe Court, in Louisville, Kentucky.   Watts filed the only claim to the currency in the related civil forfeiture proceedings. (Attachment A: Trial Exhibit 103 Claim). For the reasons stated above regarding the forfeiture of the account and Blackthorn Trace, this property is subject to forfeiture pursuant to 21 U.S.C. § 853(a)(1) as proceeds of drug trafficking.

Accordingly, the United States requests that the Court enter the attached proposed Preliminary Order of Forfeiture.

Respectfully submitted,

RUSSELL M. COLEMAN
UNITED STATES ATTORNEY


  s/*Amy M. Sullivan*
Amy M. Sullivan
Robert B. Bonar
Assistant U.S. Attorneys
717 W. Broadway
Louisville, Kentucky 40202
(502) 582-5911


## CERTIFICATE OF SERVICE


I hereby certify that on July 27, 2020, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


  s/*Amy M. Sullivan*
Amy M. Sullivan
Robert B. Bonar
Assistant U.S. Attorneys