FILED
JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: Apr 04, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA            PLAINTIFF

CIVIL ACTION NO. 3:23CV-161

vs.            CRIMINAL ACTION NO. NO. 3:16-CR-00082-CHB

DANTE DEWAYNE WATTS            DEFENDANT

PETITION TO VACATE JUDGMENT, CONVICTION,
AND SENTENCE 28 U.S.C. § 2255
(electronically filed)

Now comes DANTE DEWAYNE WATTS by counsel, James A. Earhart, and in support of the Defendant's Petition to Vacate the Judgment, Conviction, and Sentence, in this case, pursuant to 28 U.S.C. § 2255.

1. **Petitioner:**

DANTE DEWAYNE WATTS, INMATE 18475-033
FEDERAL CORRECTIONAL INSTITUTE HAZEELTON
PO BOX 5000
BRUCETON MILLS WV 26525

**2. Summary of the Case:**

a. <u>United States v Watts</u>, **USDC WDKY 3:16CR-00082-CHB**

On or about July 6, 2016, a 1 count indictment charging Watts with:

**Count 1**: 21 U.S.C. § 812 and 841(a)(1) Possession with intent to distribute e 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance as defined by Title 21, United States Code, Section 812; 50 grams or more of methamphetamine; and 5 kilograms or more of a mixture and substance containing a

Page -1-

detectable amount of cocaine, both Schedule II controlled substance as defined by Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1).

**NOTICE OF FORFEITURE** pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, proceeds the defendants obtained, directly or indirectly, as a result of said offense, and any and all of the defendants' property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation alleged in this Indictment.

On or about June 27, 2017, a 43 count superseding indictment charging Watts with:

**Count 1**: 21 U.S.C. § 846 and 841(b)(1)(a) conspiracy to possession with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance as defined by Title 21, United States Code, Section 812; 50 grams or more of methamphetamine; and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, both Schedule II controlled substance as defined by Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1).

**Count 2:** 18 U.S.C. § 1956(h) conspiracy to launder monetary instruments.

**Counts 3 - 38**: 18 U.S.C. § 1957(a)(1)(B)(i) and 2 laundering of monetary instruments.

**Counts 39 - 43**: 18 U.S.C. § 1957(a) laundering of monetary instruments.

**NOTICE OF FORFEITURE** pursuant to Title 21, United States Code, Section 853.

On or about July 2, 2019, a 3 count second superseding indictment charging Watts with:

**Count 1**: 21 U.S.C. § 846 and 841(b)(1)(a) conspiracy to possession with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of

heroin, a Schedule I controlled substance as defined by Title 21, United States Code, Section 812; 50 grams or more of methamphetamine; and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, both Schedule II controlled substance as defined by Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1).

**NOTICE:** 21 U.S.C. § 851 prior convictions

**Count 2:** 18 U.S.C. § 924( c) possession o9f a firearm in furtherance of a drug trafficking crime.

**Count 3**: 18 U.S.C. § 1956(h) conspiracy to launder monetary instruments.

**Count 4 - 39**: 18 U.S.C. § 1957(a)(1)(B)(i) and 2 laundering of monetary instruments .

**Count 40 - 44**: 18 U.S.C. § 1957(a) laundering of monetary instruments.

NOTICE OF FORFEITURE pursuant to Title 21, United States Code, Section 853.

The case proceeded to trial and on December 10, 2019, as to counts 1 through 3. Watts testified at trial. The jury found Watts guilty on counts 1 and 3. (R. 494 Jury Verdict at 2817). Watts was found not guilty of Count 2. On March 12, 2021, the court sentenced Watts to 408 months imprisonment on Count 1 and 240 months imprisonment on count 3, all concurrent for a total of 408 months. (R. 632: Judgment at 4850).

      b.      <u>**United States v Watts, USCA SIXTH CIRCUIT 21-5302**</u>

On March 25, 2021, Watts timely appealed the judgment and conviction to the Sixth Circuit Court of Appeals, Case No. 21-5302. (R. 629: Notice of Appeal at 4881)

Issues Raised:

      I.      THE DISTRICT COURT ERRED IN OVERRULING THE MOTION TO

|      | SUPPRESS WIRETAP EVIDENCE BECAUSE THE GOVERNMENT'S APPLICATIONS DID NOT SATISFY THE NECESSITY REQUIREMENT |
|------|---|
| II   | THE TRIAL COURT VIOLATED WATTS' SIXTH AMENDMENT RIGHTS WHEN IT DENIED HIS MOTION TO REPRESENT HIMSELF WITHOUT CONDUCTING A FARETTA HEARING |
| III. | THE TRIAL COURT ERRED IN ALLOWING CELL PHONE GEOLOCATION DATA AND CELLEBRITE EXTRACTIONS FROM NUMEROUS AT&T PHONES WITHOUT A PROPER FOUNDATION OR AUTHENTICATION |
| IV.  | COURT ERRED IN DENYING WATTS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM SEARCH WARRANT EXECUTED AT BLACKTHORN RESIDENCE ON JULY 8, 2016 |
| V.   | WATTS' RIGHTS TO COUNSEL AND A FAIR TRIAL WERE VIOLATED BY HIS TRIAL COUNSEL'S FAILURE TO TIMELY FILE AND PROPERLY BRIEF A MOTION TO SUPPRESS THE SEARCH OF HIS BLACKTHORN RESIDENCE AND TO EXCLUDE FROM EVIDENCE AT TRIAL THE ITEMS SEIZED |
| VI.  | WATTS' RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE INTRODUCTION OF UNNECESSARY AND PREJUDICIAL TESTIMONY ABOUT PRIOR INVESTIGATIONS ELICITED FROM LAW ENFORCEMENT WITNESSES BY THE UNITED STATES |
| VII. | THE PROSECUTION INTRODUCED INSUFFICIENT EVIDENCE AT TRIAL TO SUPPORT THE MONEY LAUNDERING COUNT ALLEGED IN THE INDICTMENT |
| VIII.| TRIAL COURT ERRED IN ALLOWING LETTER FROM TROPICANA CASINO INDICATING THAT IT BELIEVED WATTS' INCOME WAS FROM AN IMPROPER SOURCE |
| IX.  | THE TRIAL COURT ERRED IN NOT EXCUSING A JUROR WHO SAW WATTS IN HANDCUFFS |
| X.   | THE TRIAL COURT ERRED IN CALCULATING MR. WATTS' GUIDELINE SENTENCE |
| XI.  | TRIAL COURT ERRED IN FAILING TO DETERMINE AT TRIAL |

WHETHER WATTS WANTED THE JURY TO DETERMINE THE
ISSUE OF FORFEITURE

On March 9, 2022, the United States Court of Appeals for the Sixth Circuit issued an Opinion and Order affirming the district court's decision. (R. 636: Opinion and Order Judgment at 5061). On march 24, 2023, Watts filed a Petition for en banc rehearing. On April 12, 2022, the United States Court of Appeals for the Sixth Circuit issued an order denying the petition. On April 20, 2022, the mandate was issued by the United States Court of Appeals for the Sixth Circuit affirming the district court's decision. (R. 637: Mandate at 5083).

Watts did not file a Petition for Writ of Certiorari with the United States Supreme Court.

**c.** Petition to Vacate Judgment , Conviction, and Sentence 28 U.S.C. § 2255

Watts now seeks relief pursuant to Title 28, United States Code, Section 2255, alleging ineffective assistance of counsel, prosecutorial misconduct.

**3. ISSUES**

**I. INEFFECTIVE ASSISTANCE OF COUNSEL**

1. Watts received ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress the search of the residence at Baypoint.

2. Watts received ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress the search of the residence at 12600 Blackthorn Trace.

3. Watts received ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress the Title III wiretap application.

4. Watts received ineffective assistance of counsel as a result of counsel's failure to adequately meet with and review the discovery with Watts prior to trial.

5. Watts received ineffective assistance of counsel as a result of counsel's failure to file a motion to compel the United States to disclose the cell phone data and extracts from Kimki Lucas Iphone including the source of the videos being sent from cellphone 502-249-4532.

6. Watts received ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress challenging the authenticity and source of the video recording recovered from cellphone 502-249-4532, more specifically, the source of the videos were illegally recorded by the United States using a cell site simulator (stingray) and the dates of those videos were altered.

7. Watts received ineffective assistance of counsel as a result of counsel's failure to investigate prior to trial adequately, document Watts financial details, and procure the necessary witnesses at trial to rebut the United States allegation of "unexplained wealth."

8. Watts received ineffective assistance of counsel as a result of counsel's failure to submit the forfeiture issue to the jury and waived that right contrary to Watts specific direction to the contrary.

9. Watts received ineffective assistance of counsel as a result of counsel's failure to conduct an independent extraction of the content and independent expert review of the source of the videos from cellphone 502-249-4532 and Koniki Lucas Iphone 859-xxx-xxxx.

10. Watts received ineffective assistance of counsel as a result of counsel's failure to file objection to the Presentence Service Report.

11. Watts received ineffective assistance of counsel as a result of counsel's failure to call Kiniki Lewis as a witness at trial to rebut the allegation that the videos were sent from Watts cellphone to her cell phone as testified to by the agent at trial.

## II. PROSECUTORIAL MISCONDUCT - WITHHELD AND FABRICATED EVIDENCE

12. The United States engaged in prosecutorial misconduct by failing to disclose the use of a cell site simulator and illegal (Stingray) access to the Watts's cellphone.

13. The United States engaged in prosecutorial misconduct by presenting false evidence as to the source and date of the videos allegedly recovered from Watts's cellphone.

14. The United States engaged in prosecutorial misconduct by presenting false and fabricated evidence at trial:

    A. Fabricated extraction of information from cellphone 502-249-4532 and Kiniki Lucas Iphone 859-xxx-xxxx.

14. The United States engaged in prosecutorial misconduct by failing to disclose to the defense in a timely fashion Brady and discovery material that was material to the defense in this case as it related to the illegal search and access to Watts's cellphone without a warrant and in excess of that authorized by the GPS and Title III warrants issued in this case.

15. The United States engaged in prosecutorial misconduct by presenting false and

fabricated evidence at trial as it relates to the fingerprint examination performed on the firearm, i.e., prints of 'Michael Thompson" were in fact, recovered from the firearm.

4. **SUMMARY OF THE FACTS**:

The Sixth Circuit Court of Appeals summarized the facts in this case as follows:

In March 2016, federal agents began wiretapping suspected drug dealers in Louisville, Kentucky. Through these wiretaps, the agents learned that a drug trafficker named Ismael Gonzalez supplied many of these dealers. So the agents tapped Gonzalez's phone too. The Gonzalez wiretap led the agents to Watts, Gonzalez's partner who ran most of the day-to-day operations of the drug conspiracy. Gonzalez purchased kilograms of drugs from suppliers in Mexico, then arranged for those drugs to be smuggled to Louisville. Once the drugs were in the city, Watts "cut" them, packaged them for street-level sales, and distributed them to dealers. He then collected money from the dealers, which was used to pay Gonzalez's suppliers for the next shipment. This operation was very lucrative for Watts. A "conservative" financial analysis determined that Watts had over $6.5 million available to him during the conspiracy. Watts kept much of his proceeds in cash but also purchased real estate, jewelry, and other trppings of
wealth.

Federal agents listened via wiretap as Gonzalez and Watts planned a drug shipment for July 2016. To finance the deal, Watts collected roughly $400,000 that his dealers made selling the previous shipment. He arranged for his sister to deliver this money to Gonzalez, who would in turn send it to the suppliers.

This shipment proved to be the last that Gonzalez and Watts would organize. Law enforcement intercepted the delivery when it arrived in Louisville, seizing kilograms of cocaine and heroin. Police then arrested Watts, searched his residence, and found guns and drug-dealing paraphernalia. A grand jury issued a multi-defendant indictment, charging Watts with one count of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C §§ 846, 841(b)(1)(A); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); one count of conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h); and forty-one counts of money laundering, in violation of 18 U.S.C. § 1957(a)(1)(B)(i). The indictment also sought forfeiture of Watts's real estate and

certain money and jewelry that agents seized after arresting him.

Before trial, Watts and his co-defendants moved to suppress evidence from the Gonzalez wiretap, arguing that one of its wiretap applications was defective. The district court denied this motion. Watts also filed a motion to suppress the evidence found at his residence, but the district court denied that on the merits and because it was untimely. Throughout the pre-trial period, Watts also filed pro se motions, including one in which he sought to "enter as co-counsel." The district court struck these motions because Watts was represented by retained counsel  Watts went to trial on his conspiracy and gun charges. During the week-long trial, five things happened that are relevant to this appeal.

First, the government introduced "phone-ping" information to show where Watts and his co-conspirators were at certain times. Employees from T-Mobile and AT&T provided foundational testimony for this data. The sequence of their testimony is important. The

T-Mobile employee testified first, and the AT&T employee testified the next day. Between the two, a detective testified about the use of ping information in this case, and the government attempted to admit the cell-phone records through his testimony. Watts objected, pointing out that the AT&T employee had not yet testified.

The district court admitted the evidence, subject to foundational testimony from the AT&T employee. After the AT&T employee testified, the government renewed its motion to admit the ping data. Watts did not object, and the court admitted this evidence without qualification.

Second, the lead agent testified that law enforcement "knew that there was a relationship between Mr. Watts and Mr. Gonzalez" before tapping Gonzalez's phone because of "prior investigations." Watts objected to this reference to prior investigations and moved for a mistrial or an instruction for the jury to disregard that testimony. The district court agreed that the testimony was "improper" but decided against a mistrial. The court instead proposed a jury instruction. Watts approved the proposed instruction, which the district court then gave to the jury.

Third, the government introduced a letter that the Tropicana Evansville Casino sent to Watts, banning him from its property because he could not establish an income commensurate with his gambling activity. Watts objected to this letter on hearsay and relevancy grounds. The court overruled these objections, holding that the letter met the business-records exception to the hearsay ban and that it was relevant to rebut his argument that his money came from gambling, not drug trafficking.

Fourth, after a day of trial, a juror turned the wrong way while leaving the jury room and

saw Watts in the hallway. Because Watts was in custody, his hands were cuffed in front of his body and United States marshals were escorting him to a holding cell. Concerned that the juror had seen Watts's shackles, the court questioned the juror about the incident. The juror testified that he had not seen anything "unusual" or "significant" and confirmed that he could remain fair and impartial and render a verdict based on the evidence presented in court. The court ruled that there were no grounds to remove the juror. Watts objected to this decision.

Fifth, before the jury began deliberating, the court, counsel, and the defendant discussed the outstanding issues to be decided. Specifically, there was some uncertainty regarding whether Watts could request a jury finding on the existence of his prior convictions for the purposes of a sentencing enhancement. After discussions with his counsel, Watts agreed that the enhancement would be tried "by bench and not by jury." At that point, the prosecutor asked if "[t]hat would include any forfeiture matters too." When the court asked Watts's counsel whether he agreed that forfeiture would not be decided by the jury, counsel responded, "I do." The jury convicted Watts of the drug conspiracy and the money-laundering conspiracy but acquitted him of the firearm charge.1 While Watts awaited sentencing on his conspiracy convictions, he received new counsel, who sought leave to file an untimely motion for a new trial more than a year after the verdict. The court denied leave.

WHEREFORE, the defendant respectfully requests that the Court enter the accompanying Order vacating the judgement, conviction and sentence in this case on the basis of ineffective assistance of counsel in violation of his Sixth Amendment Rights under the Constitution of the

United States and prosecutorial misconduct in violation of the Fifth Amendment Rights under the Constitution of the United States

Respectfully submitted,

/s/ James A Earhart
James A. Earhart
2819 Seventh Street Road
Louisville Kentucky 40215
502-599-6864

**Certificate of Service**

I hereby certify that on the 23rd day of JUNE, 2022, foregoing Petition was filled electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

/S/ James A. Earhart